IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ZOGENIX, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEVAL PATRICK, in his official capacity as GOVERNOR OF THE COMMONWEALTH OF MASSACHUSETTS, | ) Civil Action No. 1:14-cv-11689 |
| | ) |
| and | ) |
| | ) |
| CHERYL BARTLETT, RN, in her official capacity as DEPARTMENT OF PUBLIC HEALTH COMMISSIONER, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S SUPPLEMENTAL BRIEF
IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Plaintiff Zogenix, Inc. (Zogenix) respectfully submits this supplemental brief for the limited purpose of addressing a number of legal and factual inaccuracies in Defendants' Memorandum in Opposition (Defs.' Opp.). Defendants' arguments are unavailing. First, Defendants devote several pages to the straw man arguments of express preemption and impossibility preemption, arguments never made by Plaintiff anywhere in its brief. When Defendants finally get around to addressing obstacle preemption, they do so by reliance on distinguishable cases and distortion of clear textual and structural indicia of Congressional intent. And Defendants have entirely failed to respond to Plaintiff's Dormant Commerce Clause and Contract Clause arguments, effectively conceding them.

1

Finally, it is worth noting that Defendants devote the vast majority of their Opposition to factual and scientific arguments regarding the problem of opioid addiction – a problem that will not be solved by the emergency measures at issue here. Although not relevant to the merits of its legal claims, Plaintiff feels compelled to correct the record on a number of inaccurate factual assertions made by Defendants at the TRO hearing and in their submissions to the Court regarding the purported safety concerns associated with Zohydro ™ ER.

I.     **Defendants' Preemption Arguments Are Unsupported By The Cited Case Law.**

As noted more fully in Plaintiff's Memorandum in Support, Defendants' conduct is preempted by federal law. FDA, not Governor Patrick and not the State DPH, has the authority to approve new drugs, to determine the formulations that are safe and effective for use, and to authorize their introduction into the interstate market. Defendants make much of the argument that Plaintiff failed to cite any cases standing for the proposition that the FDCA is "anything other than a gateway approval that allows for a drug to move forward and address stricter requirements imposed by individual states." Defs. Opp. at 2. That argument ignores the fact that this legal issue, as far as Plaintiff's counsel is aware, has never been litigated before, and so it is unsurprising that there would be no case law squarely addressing the issue.

Defendants have obscured the preemption analysis in this matter by, *inter alia*, citing to cases relevant to other forms of preemption analysis, such as "impossibility preemption," and express statutory preemption provisions specific to medical devices. *See, e.g.*, Defs. Opp. at 10-12, 15 (*citing Mutual Pharm. Co. Inc. v. Bartlett*, 133 S. Ct. 2466, 2474-77 (2013) (applying impossibility preemption)). As Defendants themselves concede, this is not what Plaintiff has pleaded or argued. Instead, Plaintiff's arguments are focused on "obstacle preemption," because the Massachusetts Emergency Order indeed stands as an "obstacle to the accomplishment and

execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

Defendants may find it "irrelevant" that the FDA's Congressionally-delegated approval process was designed by the legislature to protect *and* promote the public health by providing "a range of product choices" that is safe and effective. *See* Defs. Opp. at 12 n.8. Zogenix does not. To determine whether a state law poses an obstacle to the full objectives of Congress, courts consider "the entire scheme of the statute," including its text, context, and policies. *Hines*, 312 U.S. at 67 n.20. Moreover, where an agency scheme as a whole is specifically designed to promote a full *range* of "safe" product choices, state action cannot constrain the "variety and mix" of options the agency sought to make available to the public. *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 881 (2000) (internal citation omitted). In the case of prescription drugs, Congress expressly explained that the FDA's mission includes the promotion of public health through the approval of drugs that it determines to be "safe and effective." 21 U.S.C. § 393(b). It strains credulity to think that the Massachusetts Emergency Order somehow does not contravene this clear objective of Congress.

Defendants also cavalierly suggest that *Wyeth* "rejected, for purposes of the FDCA" the "more amorphous brand" of obstacle preemption. This reading of *Wyeth*'s holding, specific to and logically grounded in the drug *labeling* context, goes entirely too far. Significantly, the Court assumed, as a grounding principle for its entire analysis, that "absent clear evidence that the FDA would not have approved a change to Phenergan's label, we will not conclude that it was impossible for Wyeth to comply with both federal and state requirements." *Wyeth v. Levine*, 555 U.S. 555, 571 (2009). Here, the state mandate that Zohydro ™ ER may not be prescribed or dispensed is entirely irreconcilable with FDA's determination that Zohydro ™ ER, as a "safe and

effective" drug promoting the public health, should be made available for public distribution. This is not a labeling case; it is a case about the safety and efficacy of a drug already found to be safe and effective.  The Commonwealth's action – which seeks to require a drug manufacturer to change the formulation of its FDA-approved product to make it abuse-deterrent – simply cannot co-exist with the statutory scheme in which FDA operates.  If Plaintiff unilaterally were to change its drug formulation of Zyhdro ™ ER to comply with the Commonwealth's abuse deterrent requirements, the resulting drug would be considered unlawful under the FDCA because it would be a completely different formulation than that approved by FDA.

Defendants are correct to point out that there is precedent for the idea that federal *labeling* requirements constitute a "floor" upon which *state tort* requirements may build.  *See Wyeth*, 555 U.S. at 575; Defs. Opp. at 13.  That is not the case here.  It is neither reasonable nor feasible for Zogenix or any other drug maker to comply with additional state *approval* requirements above and beyond those instituted by the FDA.  If such were the case, manufacturers could be forced to try to create fifty different drug formulations to comply with fifty different state regulatory preferences.  This result directly would pose an insurmountable obstacle to Congressional objectives to delegate to the FDA the responsibility for promoting the public welfare through *nationwide* access drugs it expertly has determined to be "safe and effective."

## II. Defendants Effectively Have Conceded Plaintiff's Dormant Commerce Clause and Contract Clause Arguments.

Defendants failed to provide any legal argument at all with respect to Counts II and III, Plaintiff's claims under the Contracts Clause and Dormant Commerce Clause.  Defendants therefore have waived any argument that Plaintiff is not likely to succeed on the merits of its Dormant Commerce Clause and Contracts Clause claims.  *See, e.g., Ji v. Bose Corp.*, 647 F.

Supp. 2d 80, 83 (D. Mass. 2009) (party waived right to assert argument because she failed to raise it in opposition to motion).

Defendants' silence on these issues is deafening.  As noted more fully in Plaintiff's opening brief, Defendants' conduct violates the Dormant Commerce Clause by imposing significant burdens on interstate commerce through inconsistent regulation of activities that are inherently national or require a uniform system of regulation.  *See, e.g., Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 529-30 (1959).  If other states follow Massachusetts and prohibit the prescribing or dispensing of FDA-approved drugs like Zohydro™ ER because those states question aspects of the drugs' formulation, the result would cripple not just one company, but the entire pharmaceutical industry.  A patchwork of state-specific regulation governing how prescription drugs are designed and formulated would eviscerate the mission of the FDA and create 50 different fiefdoms, each deciding for itself what constitutes safe and effective pharmaceuticals for companies whose products are distributed nationally.

Defendants' actions also violate the Contracts Clause, because the Order impairs private contracts between Zogenix and other contracting parties for services in Massachusetts, all without sufficient justification.

### III. Defendants Have Made a Number of Factual Assertions Relating to the Safety Risks of Zohydro™ ER That Are Just Plain Wrong.

The harm caused Plaintiff and members of the patient public by Defendants' unconstitutional conduct is compounded by the fact that Defendants got the science so wrong when they purported to undertake their own analysis of the risks of Zohydro™ ER.  Both at the TRO hearing and in their brief, Defendants made a number of factual assertions regarding the purported safety risks of Zohydro ™ ER that simply are untrue.  While the legal merits of Plaintiff's arguments do not change regardless of whether Defendants relied on erroneous factual

predicates in taking the challenged actions, the factual errors arguably have some relevance to the balancing of the harms, and Plaintiff therefore feels compelled to correct the record.  Plaintiff made its executive officers available by phone to the Governor's office on April 10, 2014 to address these same points.[1]  Each of the following points is addressed in greater detail in the attached Declaration of David Fox, which is incorporated herein by reference, but for the Court's convenience, they are summarized below:

    **1.  Defendants are wrong to suggest that Zohydro™ ER is a new and super-potent opioid that is more addictive and more dangerous than any other opioid medication**.[2] Potency refers to the measure of a drug's activity in the body.  On a milligram-to-milligram comparative basis, hydrocodone is *less potent* than several other widely marketed opioid drugs, including oxymorphone, hydromorphone, and fentanyl.  Fox Declaration ¶ 6.  Moreover, hydrocodone has not been found by federal regulators to have a higher abuse potential, or to be more addictive, than any other similarly-situated opioid drugs.  *Id.* ¶ 14.  Nor has the Zohydro™ ER been singled out in any way by FDA as a more addictive or more dangerous opioid medication than any other extended release/long acting opioid drug product.  *Id.* ¶ 21.

    **2.  Defendants also are wrong to assert that Zohydro™ ER contains more opioid medication than any other opioid drug on the market.**  The amount of hydrocodone in each Zohydro™ ER capsule is not remarkable when compared with other long acting, extended release (ER/LA) opioid drug products.  Fox Declaration ¶ 7.  The highest strength Zohydro™ ER capsule contains 50 mg of hydrocodone.  Many of the more than 30 other extended release/long

---

[1]     Plaintiff made many of these same points in communications with the Governor's office prior to filing the present lawsuit and in a April 10, 2014 telephone call with the Governor's Deputy Chief Legal Counsel.

[2]     *See* Apr. 8, 2014 Transcript of Hearing on Emergency Motion for Temporary Restraining Order ("Tr.") at 16, lines 6-16; *see also* Declaration of Deborah Allwes ("Allwes Aff.") ¶¶ 3-10; Defs. Opp. at 5-8.

acting opioid-based drug products approved for the same use as Zohydro™ ER contain a larger quantity of the active opioid drug than the highest strength of Zohydro™ ER.  *Id.*

**3.  Defendants are wrong to suggest that Zohydro™ ER is the only extended release or long acting opioid medication on the market that does not have abuse deterrent technology built into the product.**  Zohydro™ ER, like nearly all other FDA-approved long acting opioid drug products, is not formulated with FDA-recognized abuse deterrent technology. FDA has approved more than 30 extended-release opioid drug products, including low costs generic versions of several of these products.  Fox Declaration ¶ 9.  To date, *only one* of these products has been found to use abuse deterrent technology that meets FDA medical and scientific standards — OxyContin®.  *Id.*  All other long acting opioid medications on the market today have formulations that FDA has not found to be effective in deterring misuse, tampering, or abuse.  *Id.* ¶ 10.  Moreover, none of the long acting opioid products on the market today offer any deterrence against the most common form of abuse of opioid, oral abuse (*i.e.,* taking too many tablets or capsules).  *Id.*

## Conclusion

Because Defendants have now submitted factual Declarations and received a full week to respond to Plaintiff's brief,[3] Plaintiff respectfully requests that Monday's hearing be treated as a preliminary injunction hearing.

---

[3]  Plaintiff's counsel spoke with Ms. Kaplan by telephone on April 7, 2014, more than 24 hours prior to the April 8, 2014 hearing, to provide her notice of Plaintiff's intention to seek a TRO and its request for a hearing on Tuesday.  Pursuant to Ms. Kaplan's specific request, Plaintiff's counsel emailed as-filed copies of the complaint and TRO papers to Ms. Kaplan and Assistant Attorney General Jennifer Miller on Monday, April 7, 2014 at 5:46 pm and notified them in that same email that the Court had set a hearing for 2:00 p.m. the next day.  A read receipt for this email was received from Ms. Miller at on Monday evening, April 7, 2014.

Dated: April 11, 2014

Respectfully Submitted,

/s/  Kenneth Parsigian
Kenneth J. Parsigian (BBO # 550770)
Steven J. Pacini (BBO # 676132)
LATHAM & WATKINS LLP
John Hancock Tower, 20th Floor
200 Clarendon Street
Boston, MA 02116
Tel:  (617) 948-6000
Fax:  (617) 948-6001
kenneth.parsigian@lw.com
steven.pacini@lw.com

Steven P. Hollman (*pro hac vice*)
Susan M. Cook (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5672 (Telephone)
(202) 637-5910 (Fax)
steven.hollman@hoganlovells.com
susan.cook@hoganlovells.com

*Attorneys for Plaintiff Zogenix, Inc.*

---

In addition, copies of all as-filed pleadings were delivered by courier on Monday, April 7, 2014 to the Office of the Attorney General at 4:15 p.m., the Governor's Office at 4:05 p.m. and the Office of the Commissioner of the Department of Public Health at 4:00 p.m.  Plaintiff's counsel also personally served copies of the Summonses and as-filed Complaint (with the docket number) by hand on staff members at the Governor's Office and Commissioner's Office on Monday, April 7, 2014 at approximately 4:15 p.m. and 4:25 p.m., respectively.

## CERTIFICATE OF SERVICE

  I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 11, 2014.


                /s/ Kenneth J. Parsigian