# Exhibit A



**Commonwealth of Massachusetts**
# Board of Registration in Medicine
200 Harvard Mill Square, Suite 330
Wakefield, Massachusetts 01880
(781) 876-8200

DEVAL L. PATRICK
GOVERNOR

Enforcement Division Fax: (781) 876-8381
Legal Division Fax: (781) 876-8380
Licensing Division Fax: (781) 876-8383

July 2, 2014

Secretary of the Commonwealth
State Publications and Regulations
State House, Room 117
Boston, MA 02133

RE:  Regulation 243 CMR 2.07(25)

Dear Secretary Galvin:

The Board promulgated an emergency regulation, 243 CMR 2.07(25), on April 23, 2014. We have held a Public Hearing date on June 4, 2014. The Public Comment Period ran from April 23 – June 9, 2014. We are now filing to make this regulation permanent.

Our amended Small Business Impact Letter was filed electronically yesterday. I enclose a copy of it. I also enclose a version of the regulation that shows its revisions and a final version of the regulation.

Please do not hesitate to contact me at 781-876-8262 or Eileen.Prebensen@state.ma.us, with any questions.

Very truly yours,

Eileen A. Prebensen
Senior Policy Counsel

SECRETARY OF STATE
REGULATIONS DIVISION

2014 JUL -2 PM 4: 16



Docket #    0

*THE COMMONWEALTH OF MASSACHUSETTS*
**William Francis Galvin**
Secretary of the Commonwealth

## Regulation Filing    *To be completed by filing agency*

**CHAPTER NUMBER:**    243 CMR 2.00

**CHAPTER TITLE:**    Licensing and the Practice of Medicine

**AGENCY:**    Board of Registration in Medicine

**SUMMARY OF REGULATION:**    *State the general requirements and purposes of this regulation.*

This regulation will help prevent opiate misuse and overdose. The regulation requires that physicians prescribing hydrocodone-only extended release medication without an abuse deterrent formulation will follow best practices in diagnosing and treating patients. It is part of a coordinated effort by the Dept. of Public Health, the Board of Pharmacy and other health care licensing boards.

**REGULATORY AUTHORITY:**    MGL c. 13, ss 9-11; MGL c. 112, ss 2-12DD, 61-65

**AGENCY CONTACT:**    Eileen Prebensen, Senior Policy Counsel    **PHONE:** 781-876-8262

**ADDRESS:**    Board of Medicine, 200 Harvard Mills Square, Suite 300, Wakefield, MA 01880

## Compliance with M.G.L. c. 30A

**EMERGENCY ADOPTION -**    *if this regulation is adopted as an emergency, state the nature of the emergency.*

**PRIOR NOTIFICATION AND/OR APPROVAL -**    *If prior notification to and/or approval of the Governor, Legislature or others was required, list each notification, and/or approval and date, including notice to the Local Government Advisory Commission.*

Notice to LGAC was 4/29/2014. Final approval by DPH and EOHHS was 6/27/2014. Final approval by EOAF and Governor's office was 6/30/2014.

**PUBLIC REVIEW -**    *M.G.L. c. 30A sections 2 and/or 3 requires notice of the hearing or comment period, including a small business impact statement, be filed with the Secretary of the Commonwealth, published in appropriate newspapers, and sent to persons to whom specific notice must be given at least 21 days prior to such hearing or comment period.*

Date of public hearing or comment period:    Public Hearing: 6/4/14 Comment: 4/23/14-6/9/14

FISCAL EFFECT -   *Estimate the fiscal effect of the public and private sectors.*

   For the first and second year: _____

   For the first five years: _____

   No fiscal effect:   No fiscal effect

SMALL BUSINESS IMPACT -   *M.G.L. c. 30A section 5 requires each agency to file an amended small business impact statement with the Secretary of the Commonwealth prior to the adoption of a proposed regulation. If the purpose of this regulation is to set rates for the state, this section does not apply.*

   Date amended small business impact statement was filed:   July 1, 2014

CODE OF MASSACHUSETTS REGULATIONS INDEX -   *List key subjects that are relevant to this regulation:*

Medicine
Physicians
Prescribing

PROMULGATION -   *State the action taken by this regulation and its effect on existing provisions of the Code of Massachusetts Regulations (CMR) or repeal, replace or amend. List by CMR number:*

This regulation adds a new subsection to the Board's Practice of Medicine regulations, 243 CMR 2.07(25)

ATTESTATION -   *The regulation described herein and attached hereto is a true copy of the regulation adopted by this agency.*   ATTEST:

SIGNATURE: _Eileen A. Prebensen_   DATE: 7/2/14

Publication -   *To be completed by the Regulations Division*

MASSACHUSETTS REGISTER NUMBER: _____   DATE: _____

EFFECTIVE DATE: _____

CODE OF MASSACHUSETTS REGULATIONS

| Remove these pages: | Insert these pages: |
|---|---|
| | |

### 243 CMR 2.07(25)

(25) <u>Prescribing Hydrocodone-Only Extended-Release Medication.</u>
Prior to prescribing a hydrocodone-only extended release medication that is not in an abuse-deterrent form, a licensee must

  (a) Thoroughly assess the patient, including an evaluation of the patient's risk factors, substance abuse history, presenting condition(s), current medication(s), <u>a determination that other pain management treatments are inadequate,</u> and a check of the <u>patient's data through the</u> online Prescription Monitoring Program;

  (b) Discuss the risks and benefits of the medication with the patient;

  (c) Enter into a Pain Management Treatment Agreement with the patient that shall appropriately address drug screening, pill counts, safe storage and disposal and other requirements based on the patient's diagnoses, treatment plan, and risk assessment <u>unless a Pain Management Treatment Agreement is not clinically indicated due to the severity of the patient's medical condition;</u>

  (d) Supply a Letter of Medical Necessity as required by the Board of Registration in Pharmacy <u>pursuant to 247 CMR 9.04(5)(c)</u> ~~that includes the patient's diagnoses and treatment plan, verifies that other pain management treatments have failed, indicates that a risk assessment was performed and that the licensee and the patient have entered into a Pain Management Treatment Agreement;~~ and

  (e) Document 243 CMR 2.07(25)(a)-(d) in the patient's medical record.

The purpose of 243 CMR 2.07(25) is to enhance the public health and welfare by promoting optimum therapeutic outcomes, avoiding patient injury and eliminating medication errors. Nothing in 243 CMR 2.07(25) shall alter the standard of care a licensee must use when prescribing any Schedule II, III or IV controlled substance.

## 243 CMR 2.07(25)

(25) <u>Prescribing Hydrocodone-Only Extended-Release Medication.</u>
Prior to prescribing a hydrocodone-only extended release medication that is not in an abuse deterrent form, a licensee must

- (a) Thoroughly assess the patient, including an evaluation of the patient's risk factors, substance abuse history, presenting condition(s), current medication(s), a determination that other pain management treatments are inadequate, and a check of the patient's data through the online Prescription Monitoring Program;

- (b) Discuss the risks and benefits of the medication with the patient;

- (c) Enter into a Pain Management Treatment Agreement with the patient that shall appropriately address drug screening, pill counts, safe storage and disposal and other requirements based on the patient's diagnoses, treatment plan, and risk assessment unless a Pain Management Treatment Agreement is not clinically indicated due to the severity of the patient's medical condition;

- (d) Supply a Letter of Medical Necessity as required by the Board of Registration in Pharmacy pursuant to 247 CMR 9.04(8)(c); and

- (e) Document 243 CMR 2.07(25)(a)-(d) in the patient's medical record.

The purpose of 243 CMR 2.07(25) is to enhance the public health and welfare by promoting optimum therapeutic outcomes, avoiding patient injury and eliminating medication errors. Nothing in 243 CMR 2.07(25) shall alter the standard of care a licensee must use when prescribing any Schedule II, III or IV controlled substance.

Small Business Impact Statement
Overview and Guidelines

Overview

Pursuant to M.G.L. c. 30A, §§ 2 & 3, as amended by Chapter 240 of the Acts of 2010, prior to the adoption, amendment, or repeal of any regulation, an agency must file with the secretary of state's office a public notice of the proposed action and include a small business impact statement. In the statement, the agency must consider the impact the proposed action will or will not have on small businesses in Massachusetts. The statement must include, but not be limited to, the following:
(1) an estimate of the number of small businesses subject to the proposed regulation;
(2) projected reporting, recordkeeping and other administrative costs required for compliance with the proposed regulation;
(3) the appropriateness of performance standards versus design standards;
(4) an identification of regulations of the promulgating agency, or of another agency or department of the Commonwealth, which may duplicate or conflict with the proposed regulation; and
(5) an analysis of whether the proposed regulation is likely to deter or encourage the formation of new businesses in the Commonwealth.

After the agency has afforded the public an opportunity to present data, views, or arguments related to the small business impact statement, and prior to adopting the proposed regulation, M.G.L. c. 30A, § 5 requires the agency to file an amended small business impact statement with the secretary of state's office. In the amended statement, the agency must consider whether any of the following methods of reducing the impact of the proposed regulation would hinder achievement of the purpose of the proposed regulation:
(1) establishing less stringent compliance or reporting requirements for small businesses;
(2) establishing less stringent schedules or deadlines for compliance or reporting requirements for small businesses;
(3) consolidating or simplifying compliance or reporting requirements for small businesses;
(4) establishing performance standards for small businesses to replace design or operational standards required in the proposed regulation;
(5) an analysis of whether the proposed regulation is likely to deter or encourage the formation of new businesses in the Commonwealth; and
(6) minimizing adverse impacts on small businesses by using alternative regulatory methods.

A "small business" is defined by M.G.L. c. 30A, § 1 as a business entity or agriculture operation, including its affiliates that: (i) is independently owned and operated; (ii) has a principal place of business in the Commonwealth; and (iii) would be defined as a "small business" under applicable federal law, as established in the United States Code and promulgated from time to time by the United States Small Business Administration.

A Snapshot of Small Businesses in Massachusetts

Small businesses in Massachusetts account for a significant share of the state's economic production and hiring. According to the Small Business Administration, as of 2008 there were 594,487 small businesses in Massachusetts. Of these, 138,846 were employers, accounting for 47.8% of private-sector jobs in the state.[1] Given the important role small businesses play in the Massachusetts economy, it is critical that the effects a regulation has on small businesses be justified and mitigated to the greatest extent possible.

---

[1] Small Business Administration Office of Advocacy, *Small Business Profile: Massachusetts*, available online at: http://www.sba.gov/advocacy/848/12387.

1

Guidance for Determining How Many Small Businesses will be Impacted by the Proposed Regulation

The U.S. Small Business Administration (SBA) defines small businesses according to size standards which are matched to the North American Industry Classification Systems (NAICS). The SBA table of small business size standards can be found at the following URL: http://www.sba.gov/content/table-small-business-size-standards. The SBA defines a small business differently depending on the industrial classification using either employee number or annual revenue. Because staff will most likely not have access to annual revenue data, small businesses should be considered to have an employee size of NO MORE THAN:
- 100 for Wholesale Trade (Sector 42);
- 200 for Retail Trade (Sector 44-45); and
- 500 for all other sectors

- Step 1: Identify Business Sectors to be Impacted: Staff developing the regulation should generate a list of the business sectors (using the 6-digit NAICS codes) which their program thinks will be impacted by the regulation.
  - For the most current list of NAICS codes with definitions: http://www.census.gov/eos/www/naics/2007NAICS/2007_Definition_File.pdf

- Step 2: Determine the Number of Small Businesses in Each Sector: Once there is a list of 6-digit NAICS codes that are expected to be impacted by the regulation, determine the *number* of small businesses in Massachusetts with those NAICS codes by going to the SBA's online searchable database of self-certified small businesses: http://dsbs.sba.gov/dsbs/search/dsp_dsbs.cfm\

  Once at the SBA "Dynamic Small Business Search" page:
  i) In the first section ("Location of Firm"), scroll down to highlight Massachusetts. (Leave all other selections [congressional district, county, etc.] blank.)
  ii) Leave the "Government Certifications" selections as "Not Required" (this should be the default setting).
  iii) Leave the "Ownership and Self-Certifications" selections blank.
  iv) In "Specific Nature of Business," enter the 6-digit NAICS code(s) from step one above.
  v) Leave the next four sections blank (General Nature of Business; Profile Last Updated; Maximum Acceptable Bonding Levels; and Quality Assurance Standards).
  vi) In the "Size" section, select "No More Than" and enter 500 employees (leave "Annual Revenue" blank).
  vii) Do not make any entries under "Capabilities" or "Searching for a Specific Profile."
  viii) Under "Search Results Display Options" select the number of results you want to be shown (e.g. 500), and leave the columns to be displayed and tabular format at the default setting.
  ix) At the bottom of the screen, click on "Search Using These Criteria."
  x) The number of firms displayed in your results table is the number of small businesses to be impacted by this regulation for the NAICS codes selected.

  Note: In some cases, staff will already have a list of businesses in MA that are projected to be impacted because the industry is currently regulated by an existing regulatory program and the information is collected in an existing database. Staff should determine whether this method will yield a more accurate list of small businesses to be impacted as opposed to searching the SBA database by NAICS code.

2

SMALL BUSINESS IMPACT STATEMENT

*In order to accurately predict the impact the adoption, amendment, or repeal of a regulation will have on small businesses, the promulgating authority must conduct a thorough analysis that not only considers the potential effects of the action but also quantifies the costs, if any, associated with each. The questions below are designed to aid promulgating authorities in conducting their analysis.*

Agency Submitting Regulation: Board of Registration in Medicine

Subject Matter of Regulation: Prescribing Hydrocodone-Only Extended-Release Medication

Regulation No: 243 CMR 2.07(25)

Statutory Authority: MGL c. 13, § 10; MGL c. 112, §§ 2, 5

Other Agencies Affected: Department of Public Health, Board of Registration in Pharmacy

Other Regulations That May Duplicate or Conflict with the Regulation: None

Describe the Scope and Objectives of the Regulation: The Emergency Regulation establishes standards of care for physicians who prescribe hydrocodone-only extended-release medication that is not in an abuse deterrent formulation. The regulation's purpose is to protect the public health and welfare by deterring opioid abuse and misuse. The regulation promotes patient safety because it assists physicians in avoiding patient injury and medication errors.

Business Industry(ies) Affected by the Regulation: 621111, Offices of Physicians; 621112, Offices of Physicians, Mental Health Specialists

Types of Businesses Included in the Industry(ies): 621111 Offices of Physicians, except Mental Health Specialists. Includes medical doctors (MDs) and doctors of osteopathy (DOs) primarily engaged in the independent practice of general or specialized medicine or surgery. Practitioners operate solo or group practices in their own offices, centers or clinics or in the facilities of others, such as in hospitals. 621112 Offices of Physicians, Mental Health Specialists. Includes medical doctors (MDs) and doctors of osteopathy (DOs) engaged in the independent practice of psychiatry or psychoanalysis. They operate solo or group practices in their own offices, clinics or hospitals.

Total Number of Small Businesses Included in the Regulated Industry(ies) *Please see the attached guidance documents for assistance determining the total number of small businesses*: 28 using the SBA Search.

Number of Small Businesses Potentially Subject to the Proposed Regulation: 28

Effective Date Used In Cost Estimate: 6-25-2014

| Yes | No | *Note: For each question, please answer "yes" or "no" and offer a brief explanation. Please describe any facts, data, views, arguments, or other input from small businesses, organizations or any other sources that were used to quantify the impacts outlined below.* |
|---|---|---|
| Yes ☐ | No X | Will small businesses have to create, file, or issue additional reports? |

3

| | | |
|---|---|---|
| Yes ☐ | No X | Will small businesses have to implement additional recordkeeping procedures? |
| Yes ☐ | No X | Will small businesses have to provide additional administrative oversight? |
| Yes ☐ | No X | Will small businesses have to hire additional employees in order to comply with the proposed regulation? |
| Yes ☐ | No X | Does compliance with the regulation require small businesses to hire other professionals (e.g. a lawyer, accountant, engineer, etc.)? |
| Yes ☐ | No X | Does the regulation require small businesses to purchase a product or make any other capital investments in order to comply with the regulation? |
| Yes X | No ☐ | Are performance standards more appropriate than design standards? |
| Yes X | No ☐ | Does the regulation require small businesses to cooperate with audits, inspections, or other regulatory enforcement activities? |
| Yes ☐ | No X | Will the regulation have the effect of creating additional taxes and/or fees for small businesses? |
| Yes ☐ | No X | Does the regulation require small businesses to provide educational services to keep up to date with regulatory requirements? |
| Yes ☐ | No X | Is the regulation likely to *deter* the formation of small businesses in Massachusetts? |
| Yes ☐ | No X | Is the regulation likely to *encourage* the formation of small businesses in Massachusetts? |
| Yes ☐ | No X | Can the regulation provide for less stringent compliance or reporting requirements for small businesses? |
| Yes ☐ | No X | Can the regulation establish less stringent schedules or deadlines for compliance or reporting requirements for small businesses? |
| Yes ☐ | No X | Can the compliance or reporting requirements be consolidated or simplified for small businesses? |

4

| Yes ☐ | No X | Can performance standards for small businesses replace design or operational standards? |
|---|---|---|
| Yes ☐ | No X | Are there alternative regulatory methods that would minimize the adverse impact on small businesses? |
| Yes ☐ | No X | Were any small businesses or small business organizations contacted during the preparation of this document? If so, please describe. |