UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-11689-RWZ

ZOGENIX, INC.

v.

CHARLES D. BAKER, in his official capacity as
GOVERNOR OF MASSACHUSETTS, *et al.*

MEMORANDUM OF DECISION

March 17, 2015

ZOBEL, D.J.

In an effort to combat prescription drug abuse, the Commonwealth of Massachusetts, acting through defendant health officials who have been sued in their official capacities, has sought to regulate the use and handling of Zohydro™ ER ("Zohydro"), which is a Food and Drug Administration-approved opioid painkiller. Plaintiff Zogenix, Inc. ("Zogenix"), which markets and sells Zohydro, has challenged many of these regulations as preempted by federal food and drug laws. Last year, I enjoined the Commonwealth from enforcing two preliminary forms of its regulations. Docket ## 26, 66. The Commonwealth has now issued final regulations that largely conform to my previous orders, see Docket # 73 (lifting injunction), but Zogenix continues to challenge some of the restrictions, as well as the overall scheme, in its Verified Third Amended Complaint. Docket # 78. That complaint alleges in Count I that the regulations are preempted by federal food and drug laws; in Count II that they

violate the Equal Protection Clause; in Count III that they violate the Contracts Clause; and in Count IV that they violate the Dormant Commerce Clause. Defendants now move to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Docket # 81.

**I.     Background[1]**

Hydrocodone, the active ingredient in Zohydro, is an opioid painkiller. Hydrocodone drugs have long been available in the United States, but they are usually sold as combination drugs with acetaminophen (which, for example, is the active ingredient in Tylenol®). Acetaminophen has high liver toxicity, so overuse of hydrocodone–acetaminophen combinations can cause liver damage. Zohydro, which does not include acetaminophen, is a pure hydrocodone drug—the only one on the market today.[2] Although it is formulated to provide pain relief over a twelve-hour period when used as instructed, users may immediately feel the full opioid high (without suffering ill effects from acetaminophen) by inhaling or injecting crushed Zohydro pills.[3]

Since the United States Food and Drug Administration ("FDA") approved Zohydro on October 25, 2013, it has been sold throughout the United States and in

---

[1] Because this is a motion to dismiss, I take the basic, undisputed facts from the Verified Third Amended Complaint (Docket # 78).

[2] On November 20, 2014, Purdue (a non-party that is not affiliated with Zogenix) received approval to market a hydrocodone-only drug that lacks acetaminophen but, unlike Zohydro, has abuse-deterrent properties. Docket # 90.

[3] On January 30, 2015, Zogenix received approval to market a new formulation of Zohydro that includes "BeadTek." BeadTek, according to Zogenix, is a formulation technology designed to provide abuse-deterrent properties without changing the release properties of hydrocodone when Zohydro is used as intended. But, as of now, the non-BeadTek form of Zohydro is available, and Zogenix is not authorized to include abuse-deterrent claims on the label for either formulation. See Docket # 91-1.

2

Massachusetts. It is subject to schedule II controls under both the federal and Massachusetts Controlled Substances Acts, which are the most restrictive controls available for an FDA-approved drug. Yet, because Zohydro contains no ingredients to deter abuse (i.e., it is not an "abuse resistant formulation"), Commonwealth officials have worried that these controls are insufficient to protect against further opioid abuse.

In the spring of 2014, Massachusetts Governor Deval Patrick declared opioid abuse and overdoses to be a public health emergency. With this announcement he authorized, and the Department of Public Health ("DPH") issued, an emergency order that banned the prescribing, ordering, dispensing, or administration of Zohydro. Zogenix sued, contending that federal law preempted the emergency order and seeking a preliminary injunction. On April 15, 2014, I enjoined enforcement of DPH's emergency order. See Docket # 26.

On April 22, 2014, the Commonwealth's Board of Registration in Medicine ("BORIM") promulgated an emergency regulation requiring an individually licensed prescriber to take certain steps before prescribing Zohydro,[4] including supplying a letter of medical necessity confirming that other pain management treatments had failed.[5] Similarly, on May 6, 2014, the Commonwealth's Board of Registration in Pharmacy ("BORIP") promulgated two Zohydro-related regulations. The first, which I will call the "pharmacist-only" regulation, stated that "[a] certified pharmacy technician,

---

[4] The Massachusetts regulations at issue do not refer to Zohydro by name, but instead to "a hydrocodone-only extended release medication that is not in an abuse deterrent form." Docket # 51-4. Zohydro is the only such drug.

[5] On May 8, 2014, the Commonwealth's Board of Registration of Physicians Assistants ("BOROPA") promulgated a set of regulations identical to the ones that BORIM passed.

3

pharmacy technician, pharmacy technician trainee, or pharmacy intern may not handle [Zohydro]." The second contained a host of prerequisites a pharmacist must satisfy before dispensing Zohydro.[6] Zogenix again moved for injunctive relief from these regulations on federal preemption grounds. I allowed that motion in part, enjoining the letter of medical necessity requirements then codified at 243 CMR 2.07(25)(d) and 263 CMR 5.07(12)(d). Docket # 66 at 10. I denied the motion with respect to BORIP's "pharmacist-only" handling regulation, concluding that the record was not sufficiently developed to find that Zohydro had a likelihood of success on the merits. Id. at 11. I permitted Zogenix to renew its challenge to the BORIP regulations upon a more detailed submission.

On or about July 3, 2014 – nearly contemporaneously with my last injunction – BORIM, BORIP, and BOROPA issued new, "final" regulations concerning Zohydro. Among other changes, the new BORIM and BOROPA regulations omitted the troublesome language that formed the basis for my second injunction. Where formerly other pain management treatments must have "failed" before a physician or physician assistant could prescribe Zohydro, the new regulations merely required that other pain management treatments be deemed "inadequate." 243 CMR § 2.07(25)(a) (Docket # 65-1);[7] 247 CMR § 9.04(8)(c) (Docket # 65-3).[8] Defendants expressly conceded

---

[6] The prerequisites included (1) storing Zohydro in a locked cabinet; (2) dispensing Zohydro in a container with a child-proof safety cap; (3) reviewing the Letter of Medical Necessity; (4) including a warning about Zohydro's dangers; (5) providing counseling on various issues; and (6) checking the patient's history on the Prescription Monitoring Program.

[7] The final BORIM regulation is:

Prescribing Hydrocodone-only Extended-release Medication. Prior to prescribing a

4

hydrocodone-only extended release medication that is not in an abuse deterrent form, a licensee must:

(a) Thoroughly assess the patient, including an evaluation of the patient's risk factors, substance abuse history, presenting condition(s), current medication(s), a determination that other pain management treatments are inadequate, and a check of the patient's data through the online Prescription Monitoring Program;

(b) Discuss the risks and benefits of the medication with the patient;

(c) Enter into a Pain Management Treatment Agreement with the patient that shall appropriately address drug screening, pill counts, safe storage and disposal and other requirements based on the patient's diagnoses, treatment plan, and risk assessment unless a Pain Management Treatment Agreement is not clinically indicated due to the severity of the patient's medical condition;

(d) Supply a Letter of Medical Necessity as required by the Board of Registration in Pharmacy pursuant to 247 CMR 9.04(8)(c); and

(e) Document 243 CMR 2.07(25)(a) through (d) in the patient's medical record.

The purpose of 243 CMR 2.07(25) is to enhance the public health and welfare by promoting optimum therapeutic outcomes, avoiding patient injury and eliminating medication errors. Nothing in 243 CMR 2.07(25) shall alter the standard of care a licensee must use when prescribing any Schedule II, III or IV controlled substance.

243 Mass. Code Regs. 2.07.

[8] The final BORIP regulation is:

(8) A pharmacist may not fill or dispense any prescription for a hydrocodone-only extended release medication that is not in an abuse deterrent form unless:

(a) the medication is stored in a securely locked and substantially constructed cabinet at all times while on pharmacy premises;
(b) the medication is dispensed in a container with a child proof safety cap or within a locked box;
(c) the prescriber has supplied a new Letter of Medical Necessity for each prescription that includes the patient's diagnoses and treatment plan, verifies other pain management treatments are inadequate, and indicates a risk assessment was performed and the prescriber and patient entered into a Pain Management Treatment Agreement or indicates that the prescriber has determined that a Pain Management Treatment Agreement is not clinically indicated due to the severity of the patient's medical conditions, and the pharmacist keeps the Letter of Medical Necessity in a readily retrievable manner;
(d) each prescription is accompanied by a written warning approved by the Board regarding the specific dangers of hydrocodone-only extended release medication that is not in an abuse deterrent form;
(e) the pharmacist provides counseling that includes a review of the written warning supplied in accordance with 247 CMR 9.04(8)(d) and may include, but is not limited to: 1. the name and description of the medication; 2. the dosage form, dosage, route of

that this wording would not be preempted or problematic at the June 10, 2014 hearing. See Docket # 71 at 14-15. The new BORIP regulations changed the "pharmacist-only" handling regulation to allow both pharmacists and pharmacy interns to handle Zohydro.[9] Certified pharmacy technicians, however, were still prohibited from doing so. On the defendants' motion, I lifted the injunction on August 28, 2014. See Docket # 73.

On September 15, 2014, Zogenix filed a Verified Third Amended Complaint (the "Complaint"). Docket # 78. Although the Complaint takes issue with all of the final regulations, including the BORIM and BOROPA regulations, its focus is on the effect that the BORIP handling regulations will have on pharmacists' ability to distribute Zohydro. Compare Second Am. Compl. (Docket # 51) ¶ 11 ("Taken together, these requirements impose such draconian restrictions <u>on physicians' ability to prescribe Zohydro ER</u> that they amount to an effective ban of the drug in Massachusetts."), with Third Am. Compl. (Docket # 78) ¶ 13 ("Taken together, these requirements continue to

---

administration and duration of drug therapy; 3. special instructions and precautions for preparation, administration and use by the patient; 4. common adverse or severe side effects or interactions and therapeutic contraindications; 5. techniques for self-monitoring drug therapy; 6. proper storage; 7. prescription refill information; 8. action to be taken in the event of a missed dose; and 9. signs and symptoms of an acute overdose.
(f) the pharmacist checks the patient's history on the online Prescription Monitoring Program.

247 Mass. Code Regs. 9.04.

[9] The final BORIP handling regulation is:

(3) A certified pharmacy technician, pharmacy technician or pharmacy technician trainee may not handle any hydrocodone-only extended release medication that is not in an abuse deterrent form. Pharmacy interns under the direct supervision of a registered pharmacist may handle hydrocodone-only extended release medication that is not in an abuse deterrent formulation.

247 Mass. Code Regs. 8.05.

impose draconian restrictions <u>on pharmacists' abilities to stock or dispense Zohydro® ER</u> that . . . amount to an effective ban of the drug in Massachusetts.") (emphases added). Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Docket # 81.

## II. Subject Matter Jurisdiction and Scope of Zogenix's Challenge

Defendants first challenge whether this court has subject matter jurisdiction over the Complaint, contending that some or all of Zogenix's claims are moot because the challenged regulations have expired or been superceded. Defendants also argue that Zogenix cannot challenge the gubernatorial public health emergency declaration because that declaration, standing alone, does not affect Zogenix. But Zogenix concedes that it is not asking the court to enjoin regulations that are no longer in effect or the gubernatorial declaration itself—it is challenging only the final regulations. Because those regulations are currently in effect, Zogenix's claims are not moot and this court has subject matter jurisdiction over the dispute.

There are now three sets of final regulations: the BORIM regulations that apply to doctors, the BOROPA regulations that apply to physician assistants, and the BORIP regulations that apply to pharmacies and pharmacists. Although Zogenix objected to previous versions of the BORIM and BOROPA regulations, the final versions are free from any previously challenged elements. Indeed, the final BORIM regulations use language to which Zogenix had "no objection" earlier in this case. See Docket # 71 at 14-15. And, at the hearing on this motion, Zogenix could not point to any specific provisions of the final BORIM and BOROPA regulations that it is challenging, naming

7

only "the intended operation and effect" of "the entire regulatory scheme." Docket # 85 at 20:11-12. Zogenix has therefore waived any objections to the BORIM and BOROPA regulations specifically, and I construe its complaint to challenge only the final BORIP handling regulations.[10] Of course, to the extent that the history of the BORIM and BOROPA regulations informs the purpose and effect of the BORIP regulations, they remain relevant to this motion and this case.

## III.   Motions to Dismiss Under Rule 12(b)(6)

### A.   Legal Standard

In order to survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim upon which relief can be granted. See Ashcroft v. Iqbal, 556 U.S. 662 (2009). For purposes of a motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. See Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 52-53 (1st Cir. 2013). Ordinarily, the plaintiff's factual allegations are assumed to be true for purposes of a motion to dismiss. See Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011). But where allegations, though "not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual," they need not be credited. Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

---

[10] To the extent that Zogenix seeks to challenge any other parts of the BORIP regulations, which is unclear from its Complaint and briefing, those arguments are waived. The only specifically objectionable provision of the BORIP regulations that Zogenix has pointed to since it filed its current Complaint is the handling regulation.

8

## B.     Preemption (Count I)

Zogenix first contends that the final BORIP regulations are preempted by the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-399f, again arguing that they "constitute an effective ban on Zohydro." Compl. ¶ 85. According to Zogenix, the regulations preventing certified pharmacy technicians from handling Zohydro "are unconstitutional because they make it so difficult to dispense Zohydro® ER that pharmacists are unlikely to do so," with the effect being that pharmacies "will likely [be] bar[red] . . . from stocking Zohydro® ER at all." Id. The defendants disagree, essentially contending that the claim should be dismissed because it is facially absurd and unbelievable.

Zogenix's position is essentially the same as when it sought injunctive relief against the "pharmacist-only" BORIP regulation last year. Zogenix, Inc. v. Patrick, No. 14-cv-11689-RWZ, 2014 WL 3339610, at *3 (D. Mass. July 8, 2014). As I explained there, the issue is one of obstacle preemption, which occurs when, "under the circumstances of [the] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67 (1941). The obstacle preemption doctrine holds that "[i]f the purpose of the [federal] act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power." Savage v. Jones, 225 U.S. 501, 533 (1912). Resolving the obstacle preemption question requires me to "do as Savage instructs and assess

9

whether the regulations prevent the accomplishment of the FDCA's objective that safe and effective drugs be available to the public." 2014 WL 3339610, at *4; see also Wos v. E.M.A. ex rel. Johnson, 133 S. Ct. 1391, 1398 (2013) (holding that preemption analysis must consider "what the state law in fact does").

On the record before me last summer, I could not allow Zogenix's motion to enjoin the "pharmacist-only" BORIP regulation because Zogenix had not offered sufficient evidence of the regulations' effect on Zohydro's availability. Id. at *5. But I did not foreclose the possibility that "a more detailed submission," informed by a "record of enforcement," might show "whether . . . an obstacle [to the FDCA's objectives] exists." Id. Zogenix may be able to show, through survey evidence or third-party discovery from pharmacies and physicians, that Massachusetts pharmacies are not stocking its drug because of handling difficulties caused by the regulations and that their failures to stock the drug are affecting physicians' prescribing practices. Zogenix has alleged such facts in its Complaint, and I must take those allegations as true at this stage. That the defendants are skeptical that the evidence will support those allegations is immaterial, because, if the allegations are proven, Zogenix will be entitled to relief. The defendants' motion to dismiss this count is therefore denied.

### C. Equal Protection, Contracts and Dormant Commerce Clause Claims

As an alternative to its preemption arguments, Zogenix claims that the final regulations violate the Equal Protection Clause by singling out Zohydro for restrictions not applicable to any other extended-release opioid products; violate the Contract Clause by impairing certain contracts the company signed with third parties relating to

the distribution and use of Zohydro in Massachusetts; and violate the dormant commerce clause by imposing an undue burden on interstate commerce. The defendants take exception to each of these claims, contending that each fails as a matter of law. I agree and allow defendants' motion to dismiss these claims.

### 1. Equal Protection Clause (Count II)

Zogenix's Equal Protection Clause claim is premised on the BORIP regulations treating Zohydro differently from similarly situated drugs. The parties have vigorously briefed the merits of this class-of-one equal protection claim, but they have failed to address a threshold issue—whether Zogenix has standing to assert it. Because I conclude that Zogenix does not, the equal protection claim is dismissed.[11]

BORIP primarily regulates "retail drug business[es] [and] wholesale druggist[s]," Mass. Gen. Laws ch. 94C, § 6, pharmacists, id. ch. 112, § 24, pharmacy technicians, id. § 24C, and pharmacists' support staff, id. § 30. But it does not regulate, and has no authority to enforce its regulations against, drug manufacturers like Zogenix. To the extent that Zogenix contends that the BORIP handling regulations contravene the Equal Protection Clause, the regulations must do so by treating certain regulated individuals or regulated classes differently (e.g., by prohibiting certified pharmacy

---

[11] Defendants discussed the facts giving rise to the standing defect in addressing the merits of Zogenix's claim. But, because standing is a jurisdictional issue, I must address it independently and not reach the equal protection claim. Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006) ("A federal court must satisfy itself as to its jurisdiction, including a plaintiff's Article III standing to sue, before addressing his particular claims, regardless of whether the litigants have raised the issue of standing.").

technicians, pharmacy technicians, and pharmacy technician trainees from handling Zohydro while allowing pharmacists and pharmacy interns to do so). Although Zogenix may feel some economic effects from these regulations, they do not directly contravene its equal protection rights. Zogenix therefore does not have standing, on its own, to assert an equal protection claim.

Zogenix also does not have third-party standing to assert an equal protection claim on behalf of the regulated parties. The First Circuit's recent opinion in Freeman v. Town of Hudson, 714 F.3d 29 (1st Cir. 2013), which considered the requirements for third-party standing in the class-of-one equal protection context, is instructive. The plaintiff there alleged that a building commissioner violated his equal protection rights by selectively enforcing zoning laws against a third party who displayed the plaintiff's business sign. The First Circuit dismissed the claim, explaining that "[w]hile [the plaintiff] conceivably suffered some economic harm as a result of [the building commissioner's] actions—the lost value of advertising his work in the community—this alone typically does not give rise to third-party standing." Id. at 39. After finding that there was "no allegation that the customer is incapable of asserting his or her own rights," the First Circuit concluded that no exception to the general rule against asserting the rights of others applied and that the plaintiff lacked standing. Id. Such is the case here, where there is no allegation that the regulated parties (e.g., certified pharmacy technicians) could not assert their equal protection rights on their own. This court therefore lacks jurisdiction over Zogenix's equal protection claim.

To the extent Zogenix seeks to frame the alleged injury as one to its commercial

interests which may satisfy the standing requirements, 13A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3531.4 (3d ed. 2014), its equal protection claim is still misplaced, as I explained in my July 2014 order. 2014 WL 3339610, at *2 n.3. To state a class-of-one equal protection claim, Zogenix must show "the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 602 (2008); see also Caesars Mass. Mgmt. Co., LLC v. Crosby, No. 14-1681, 2015 WL 627213, at *7 (1st Cir. Feb. 13, 2015). Zogenix concedes that Zohydro "is the first single-entity hydrocodone product available on the market [and] the first extended release hydrocodone product." Compl. ¶ 6. There are necessarily no comparable products, and no baseline from which to measure regulatory departures, if Zohydro is unique in these (or other) material ways. The complaint's failure to do more than conclusorily state that Zohydro is "similarly situated [to unspecified other] extended-release/long acting opioid medications on the market" is insufficient to survive defendants' motion to dismiss.

### 2. Contracts Clause (Count III)

The Contracts Clause of the United States Constitution provides that "No state shall . . . pass any . . . law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. But, despite this sweeping language, the Supreme Court has recognized that states may enact laws and regulations that impair private contracts if they are acting to protect "basic interest[s] of society." Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 445 (1934). To determine whether a state law or regulation contravenes the

Contracts Clause today, "the threshold inquiry is 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" Energy Reserves Grp., Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411 (1983) (quoting Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 243 (1978)).  If so, "the State, in justification, must have a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem." Id. (internal citation omitted).  Health and safety, for example, are paradigmatic examples of legitimate public purposes.  Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 191 (1st Cir. 1999).  "Upon finding a legitimate public purpose, the next step ordinarily involves ascertaining the reasonableness and necessity of the adjustment of contract obligations effected by the regulation." Id.  That a regulation is under-inclusive and only partially addresses the legitimate public purpose does not render it unreasonable or unnecessary.  Cf. Williamson v. Lee Optical of Okla. Inc., 348 U.S. 483, 489 (1955); Erwin Chemerinsky, Constitutional Law § 8.3.3 (4th ed. 2011) (analogizing Contracts Clause analysis to rational basis review where government is not a contracting party).

Zogenix alleges that the BORIP regulations impair two of its contractual relationships: those with wholesalers that supply Zohydro to Massachusetts pharmacies, Compl. ¶ 102, and those with Inflexxion, a company that it retained to track abuse patterns for Zohydro within Massachusetts, Compl. ¶ 103.  I assume, without deciding, that the BORIP handling regulations will impair these contracts.  Yet, Zogenix still has not stated a claim for violation of the Contracts Clause.  Zogenix concedes that

14

the BORIP regulations were promulgated to "combat[] opioid overdoses" after the Governor of the Commonwealth "declared a public health emergency." Compl. ¶ 43; see also id. ¶ 105 (describing "Commonwealth's stated purpose [as] addressing opioid abuse in general"). "Health and safety are two mainstays of the police power" and are legitimate public purposes for the Commonwealth to pursue. Houlton Citizens' Coal., 175 F.3d at 191. There is no question that the BORIP regulations aim to restrict access to Zohydro, an opioid, to a smaller group of handlers than other drugs, so the regulations are directed at achieving the Commonwealth's legitimate public purpose. That the regulations are under-inclusive because they fail to restrict access to other opioids does not make them unreasonable. Cf. Williamson, 348 U.S. at 489 ("[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind."). The BORIP handling regulations therefore do not contravene the Contracts Clause, and Zogenix's Contracts Clause claim is dismissed.

### 3. Dormant Commerce Clause (Count IV)

The Dormant Commerce Clause doctrine, which is implicit in Article I, § 8 of the United States Constitution, holds that state and local laws are unconstitutional if they place an undue burden on interstate commerce. The Dormant Commerce Clause, like the Commerce Clause itself, applies to "[a]ll objects of interstate trade," including pharmaceutical products. City of Philadelphia v. New Jersey, 437 U.S. 617, 622 (1978); cf. Pharm. Research & Mfrs. of Am. v. Cnty. of Alameda, 768 F.3d 1037, 1045-46 (9th Cir. 2014). The Supreme Court "has adopted what amounts to a two-tiered approach to analyzing state economic regulation under the Commerce

Clause." Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 578-79 (1986). First, "[w]hen a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [the Court has] generally struck down the statute without further inquiry." Id. at 578 (citations omitted). But, if "a statute has only indirect effects on interstate commerce and regulates evenhandedly," it is reviewed under a less stringent standard. "Under that test[,] . . . courts employ a balancing approach whereby they examine whether the state's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." Pharm. Care Mgmt. Ass'n v. Rowe, 429 F.3d 294, 312 (1st Cir. 2005) (citing Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)).

Zogenix alleges, and the defendants do not contest, that Zohydro is an object of interstate trade that may fall within the dormant commerce clause framework. There are no allegations that the BORIP handling regulations discriminate against out-of-staters or purport to regulate conduct outside Massachusetts' borders. The Dormant Commerce Clause claim therefore boils down to the Pike balancing test—i.e., whether the burden of the BORIP handling regulations on interstate commerce (if any) clearly exceeds the putative local benefits.

In its complaint, Zogenix alleges that the BORIP regulations burden the interstate market for Zohydro in two ways: they force patients (both Massachusetts residents and residents of other states) who are being treated by Massachusetts physicians to "jump through extremely burdensome hoops in order to obtain FDA-

16

approved medication," Docket # 78 ¶ 112, and they "will effectively prevent national pharmacy chains from dispensing Zohydro," Docket # 83 at 23.[12] Neither of these theories is sufficient to support Zogenix's claim. Assuming that the effect on patients is true, it is not an impermissible burden on interstate commerce. It does not contravene the dormant commerce clause for a state merely to regulate the distribution within its borders of a product that travels in interstate commerce. See, e.g., Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 128 (1978) ("[W]e cannot adopt appellants' novel suggestion that because the economic market for petroleum products is nationwide, no State has the power to regulate the retail marketing of gas."); cf. Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573, 582-83 (1986) (concluding that "New York may regulate the sale of liquor [a product in interstate commerce] within its borders," even though "it may not project its legislation into other States by regulating the price to be paid for liquor in those States") (internal quotation marks omitted). And, although Zohydro's theory about national pharmacies refusing to dispense Zohydro may be sufficient to show a burden on interstate commerce, the speculative and threadbare allegations in the complaint are insufficient to meet the pleading requirements. Despite having information on which national pharmacies order its drug and despite serving three different complaints in this case, Zogenix has not described a single example of a national pharmacy refusing to dispense Zohydro—let

---

[12] Zogenix cites paragraph 112 of its Verified Third Amended Complaint for this point, but I have been unable to find a mention of national pharmacy chains anywhere in that document. Nonetheless, at this motion to dismiss stage, I will construe the pleadings in Zogenix's favor and assume that this theory was properly pleaded.

alone an example of a national pharmacy refusing to dispense Zohydro because of the BORIP handling regulations. Cf. Selevan v. N.Y. Thruway Auth., 711 F.3d 253, 261 n.8 (2d Cir. 2013) ("[C]onclusory allegations . . . are an insufficient basis upon which to sustain a claim of discrimination against interstate commerce."); Washington Gas Light Co. v. Prince George's Cnty. Council Sitting as Dist. Council, 784 F. Supp. 2d 565, 577 (D. Md. 2011) (concluding that pleading requirements were not met where "Plaintiff has offered only conclusory allegations and not the underlying facts to support its dormant Commerce Clause theory").

Even assuming that the BORIP handling regulations place some minimal burden on interstate commerce, Zogenix's Dormant Commerce Clause claim would still fail as a matter of law because that burden is outweighed by the regulations' putative benefits, i.e., promoting public health and safety. Zogenix contends that the facts have not developed in a way that Zohydro presents a risk to public health in the first place, but that misses the point of the Pike test. Under Pike, "it is the putative local benefits that matter[,] not whether these benefits actually come into being at the end of the day." Pharm. Care Mgmt. Ass'n, 429 F.3d at 313. Any burden that the BORIP handling regulations might have on interstate commerce cannot "clearly exceed" the regulations' putative benefits of promoting public health and safety by combating opioid abuse. Zogenix's Dormant Commerce Clause claim is therefore dismissed.

## IV. Conclusion

Defendants' motion to dismiss (Docket # 81) is, therefore,

- on Count I: DENIED;

- on Count II: ALLOWED;

- on Count III: ALLOWED;

- on Count IV: ALLOWED.

Plaintiff's motion to file a second supplemental brief (Docket # 91) is also ALLOWED.

The court takes notice that Zogenix has announced the sale of its Zohydro business to Pernix Therapeutics. See Zogenix, Inc., Current Report (Form 8-K) (Mar. 10, 2015). If that deal closes, standing issues may arise. Zogenix is HEREBY ORDERED to notify the court within 10 days of the closing of any sale of its Zohydro business and, in that report, address whether it has standing to continue prosecuting this case.

|       March 17, 2015       |       /s/Rya W. Zobel       |
|:--:|:--:|
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |